And we're going to hear our next case, which is U.S. v. Edwards, Mr. Carpenter. May it please the Court. This appeal presents two questions, one on the merits and one on harmless error. I'd like to start on the merits. We're asking the Court to find that the 2008 conviction in this case should not have scored any criminal history points because the state judgment and the underlying state law established that the maximum possible sentence was 12 months and not 12 months plus 53 days. How much time did he actually do? If you look at the PSR, it looks like he did around 10 months, which I think is pretty standard for a 12-month state court sentence. So he did that, did he do the 53 days? Yeah, I can grab the PSR. He served the 53 days initially and then... So he didn't get time off on the other sentence for the 53 days. So it was the 10 months plus the... Sorry, let me just be precise here. If you look at Joint Appendix page 99, probation was revoked in November. He then was released in August, which is around nine months plus the 53 days. So in total, he served just under 12 months of actual time by quick math. Well, if Mr. Edwards had not violated his probation, how would you calculate his imprisonment period? Sure. If he had not violated and had the original sentence activated, then the calculation of his criminal history points would be governed by 4A1.2 subsection B2, under which it says if part of a sentence of imprisonment was suspended, the sentence of imprisonment for scoring purposes refers only to the portion that was not suspended. So had it not been, had there not been a violation and an activation of the full 12 months, for scoring purposes, it would have been 53 days. That would have counted, which would have put him under subsection, I think it's three, or whichever one of the C, where you get one point. Again, that would have timed out in this scenario, which is why the difference is between three points and zero, or excuse me, four points with the status point and zero points, because the 53-day sentence would have been beyond the 10-year limitation. Well, was the district court required to impose the original sentence after the revocation? The state court? Yes. I don't know if it was a requirement to revoke him, but what we know, and there's nothing really in the record other than the state court judgment. No, I meant impose the sentence. Let me restate that. Was the district court required to impose the original sentence after the revocation? So I think the district court, just to be precise on the language, I'm sorry, the state court did not impose anything at the time of the revocation. What the state court did at the time of the revocation was to activate the previously imposed sentence. And to be clear, I am drawing a distinction between those two verbs, activate and impose, and I think that's what this court's opinion in Stewart did as well, because the defendant in Stewart argued that activation of a previously imposed North Carolina sentence was the same thing as the imposition. In Stewart, wasn't there a total suspension? It was, yes. And we think that doesn't matter because of the rationale of what Stewart said, which was relying on the language of what subsection K says. And to quote the language in Stewart, this section, the adding methodology, applies where one offense yields both an originally served sentence and a separate revocation sentence. That doesn't apply, it says, because Mr. Stewart received only one sentence, which was originally suspended but later activated. And that's what happened here. There was always one sentence in this case, the 10 to 12-month sentence. It was originally imposed, it was suspended all except for 53 days, and it was later activated requiring him to serve. If I remember Stewart correctly, wasn't that, maybe I'm confusing another case, wasn't that a case where there were two separate events and they happened to do the sentencing on the same day? So yes, and that takes to the point, as Stewart recognizes, a revocation has two effects on criminal history scoring. One is the aggregation effect, which is what we're talking about in this case where you total it. But what the defendant was arguing about in Stewart was the other effect of a revocation, and that's what I call the linking effect, where the revocation sentence is linked to the originally imposed sentence for purposes of the timing rules in terms of when a sentence times out. And the specific issue in Stewart, the linking effect mattered for application of the single sentence rule, because, again, the defendant tried to analogize the activation of a North Carolina sentence to the imposition of a sentence, and the court said that those are separate things. Well, the statute here seems to, the North Carolina statute, refers to the term of imprisonment. A court may suspend the term of imprisonment. And, in addition, require the defendant to submit to a period or periods of imprisonment with relation to probation. That suggests there's two periods that we're addressing. One that is suspended, and that's Stewart and what we've been talking about. But in this special hybrid statute, the court imposes a separate period of imprisonment as a condition of probation. Yes, Judge Rushing, if that were the way it worked, where they were actually separate, we would not be here. The reason we are here and the reason we think we have the right reading of this is that under North Carolina law, the 53-day term is part and parcel of the 12-month sentence. We know that to the extent there's ambiguity on the face of the statute itself, the state court decisions in the Ferris litigation answer that, both in the State Court of Appeals and the State Supreme Court, saying that any time that is served as part of the special probation is mandatory to be credited towards and as part of the... Does that answer the question? The fact that there are two, the court imposes two sentences, one that is suspended and one that must be served as a condition of probation, seems to be a separate question when it comes to applying the guidelines versus do you get credit for time served, which is other courts have dealt with that in the guidelines context. Sure, and we don't dispute, again, that the time served situation is different in general. What makes this North Carolina statute different than the ones at issue in cases like Merritt and Rengefo from the other circuits is that this is an activation of a previously imposed sentence as opposed to the imposition of a separate revocation sentence. And so when you read the statute as a whole, if the court is invoking the special probation provision, which it did clearly in the judgment, it requires that a term of imprisonment of some sort has to be imposed. That term cannot exceed one-fourth of the overall term, and it counts towards the sentence if it is later activated. Those are the components of state law that make this different from just an ordinary time served type of case with a revocation. And so those are the facets of state law that we think bring us to a different result here than in the out-of-circuit cases. And I think the sort of other point to make on that, and we've talked sort of about Stuart, we've talked about the text of 4K, which requires the separate sentence. The third point to make on this is that the sentencing commission consciously drew a distinction here between ordinary revocation situations involving parole or probation and those involving judicially suspended sentences. That is the distinction that we think matters here and why the suspension here is treated differently than crediting in other contexts. What about harmless error? Sure. So I think that the court should find that the error is not harmless. The government has not met the burden that this court sets. And that's because this court's precedent is clear. It's set a clear rule, and it's set that rule for a long time, that if a district court judge wants to insulate a guidelines ruling and say, look, this ruling ultimately didn't matter to my sentence, it's very easy to do so by simply saying, if I'm wrong about this, I'd give the same sentence. This court sees those types of cases all the time. There are even more of them out there where we don't bother appealing. The court did not do that here. It instead said, I would look at the same criminal history category, but of course the criminal history category is only one component of the 3553A factors, and there are other mitigating factors in this case that we think would matter in determining the size of a variance if the court was starting from the lower range, including, I think most importantly, the fact that the judge credited that the offense in this case, the escape, was not motivated by any type of criminal intent, but instead by genuine concern that Mr. Edwards held for his daughter. We think that's a factor that would limit the scope of a variance if the court were starting from the correct range. We think that's supported by the other factors in the record as well, including the equivocation, saying that it was sort of the same result instead of exactly the same result. This court in Shivers relied on similar equivocation where the court said it was not a significant factor, and I would highlight that in that case when it was remanded, there was a 14-month difference in the sentence. Again, the same thing. What is his custody status now? Is he a free servant? He is in custody now. His release date is set for May of 2025, and that's why we had filed the motion to expedite the case to move it along a little more quickly in hopes that if we do get a resentencing and he gets a few months off, that that would be meaningful for him and could hopefully be released early next year. The other point I'd make on harmless error, Judge Floyd, is that as we highlighted in the briefing, the court did not check the box on the Statement of Reasons form which allows it to signal to the court that it would impose the same sentence. I think that's significant because our district court has added this box in response to this court's precedent to make it easy. Not every district has this box. I communicated with several colleagues in other districts who said they've never seen a box like this on the Statement of Reasons form. So I think our district court has added it for simplicity, and as the court recognized in Shivers, if the box is there and it's not checked, that's an indication that the judge doesn't intend to invoke this court's rule. I would highlight my friend argued that it's no obligation to check the box and that there are other guidelines calculations, but this is a box that you can type in additional information. I would highlight that at Joint Appendix 115, the district court typed into the Statement of Reasons form that he had overruled our objection on the criminal history. He could have very easily added a few more words there to say, even if I'm wrong, I would give the same sentence on that particular issue. So, again, we think the standard for harmless error is very defendant-friendly. If it is a close case, we believe, in essence, the tie goes to the defendant to get a resentencing and let the district court make a full and fair determination starting from the correct guidelines range. Your Honor, if there are no further questions, I yield the balance of my time. Thank you very much, Mr. Carpenter. Ms. Ray, why don't you give us your side? Thank you. May it please the Court. Amy Ray for the United States. I'll start with the merits. The guidelines don't treat suspended sentences especially differently if they're not completely suspended. And if we look at 4A1.2b2, the guidelines say that a sentence of imprisonment means only the active portion of a suspended sentence. Mr. Edwards received a 53-day term of active imprisonment. It was imposed. That's page 81 of the Joint Appendix. And then he received later, it was imposed, a 12-month sentence. And so the guidelines say that that is to be added together. And the reason that that's defendant-friendly is that they only make one, if you are revoked, no matter how many times a defendant is revoked, you only get one number of criminal history points assessed. It could be one, two, or three. But it also makes sense that if you are revoked again and again or even just once, you have a higher number of criminal history points scored potentially than if you are never revoked. So it's a rule that makes sense in the way that the Sixth Circuit addressed it in merit. And while Stewart says that a suspended sentence is a revocation sentence, it doesn't have any meaningful distinction for purposes of this case where we have a 53-day sentence imposed and then later the year is imposed. That's what the judgments say. And this is determined by federal law. It's very clear. This Court's decision in Miller holds that federal law determines how the guidelines are interpreted, not state law. And there's nothing especially unique about suspended sentences. They occur in all kinds of states. And what the guidelines say if we apply K2, B1, B2, is here you had multiple sentences imposed, and they are added together. When they are added together, they properly yield three criminal history points. So the 53-day sentence is imposed for misconduct A. The other sentence, is it for misconduct B, or is it all part of A? It's when he revoked. The misconduct is kind of like when somebody violates supervised release, right? It's the violation of trust. They've done something that violated probation, which is why then the suspended portion is activated or imposed. And really the activation matters for purposes of state law because they get credit for those 53 days. But for purposes of the guidelines, you have two judgments. One imposes 53 days and one imposes a year. And it was different conduct that required that that second judgment be entered. In other words, it is A and B. Right. I think so, Your Honor. I think so. Now, I'll turn to harmless error. That's sort of our basic argument on this. We have two judgments. B2 says a sentence of imprisonment means the active portion of the sentence. That's 53 days, and then later we have a second judgment. And I do want to just respond, I guess, briefly to one of the distinctions that Mr. Carpenter made in his reply brief about merit. There was some language in merit that said, well, this isn't a suspended sentence. If it were, it would be different. That's right, because if it were suspended in toto, as it was in Stewart, it wouldn't count at all. But it's the fact that he received an active sentence that makes this different. And the reason that merit and rengifo are helpful is they establish that even if you get multiple sentences, that you never could have served that total time. In fact, in merit, the total time was greater than the actual days that had elapsed. It still counts for purposes of the criminal history score. Turning to harmless error, this court has recognized also for a very long time that a district court does not need to say what Mr. Carpenter suggests it needs to say, which is that it would have imposed the same sentence. That is not required as made clear by the court's decisions in Savillon, Matute, and I have no idea how that's pronounced. That's my best guess, and Schrader. In both of those cases, the court did not say it would have imposed the same sentence. In fact, those cases are much more challenging for the government than this case because they didn't even say he would have applied the same guideline range. Here, the judge says, I would have applied the same guideline range. I would have applied criminal history category 5. And that being the same guideline range means the rest of the calculus, there's no question because he starts from that range and says, I'm going to impose a modest six-month variance of 24 months, and he explains it using several different factors, including the fact that this defendant escaped because he was concerned that his daughter had run away. So Judge Bell did consider that mitigating factor when he determined how far to go up on the variance. But he says twice on the record it would have been the same. And the phrase sort of was yes thrown in there, but he says it sort of would have been the same because either way, based on your criminal history, I would have gone up to criminal history 5. And it makes sense that he would have done that, and that's also very consistent with what this court's decisions require. Shivers is different because in Shivers, the judge was specifically asked, Your Honor, would you mind saying on the record that you would impose the same sentence? And Judge Reidinger in that case declined to say that. He just said, well, the guidelines really weren't a significant factor. Now, we felt in Shivers like that was close enough to Savignon-Matute and to Schrader, but we lost that. This is not that case because he specifically says, I would have applied the same guideline range. Addressing the box. First of all, the box doesn't have to be checked in any event. It's there. If it's checked, great. It's more helpful to the government. But there's nothing that requires that it be checked. But here's why it's not especially helpful to the defendant in this case. The judge in this case made two disputed guideline determinations. One was related to the criminal history points, the assessment of points to the fleeing to a lieu defense that we were talking about. The second was whether or not there should be a reckless endangerment increase. And the government argued that there should be. The defendant objected to that increase, and the judge resolved that dispute. So that box says, if I had made the guideline determinations the same, I would have imposed the same sentence. Or even if I had decided them differently, I would have imposed the same sentence. But where you have two disputed guideline determinations, a judge could very reasonably not check that box, because he may think, yeah, if I had reached a different decision on the fleeing to a lieu, I would have reached, I would have gone up further, or I wouldn't have had to go up further. I would have just had a higher range. Judge Bell did consider that reckless endangerment. He talked about that offense conduct, that Mr. Edwards took the officers on a high-speed chase through some neighborhoods in Charlotte. And he talked about that, but he just didn't check the box, perhaps because he made two disputed decisions, and had he gotten that increase and he found that increase, he would have gone even higher. Your Honors, I'm not hearing any questions, and I think our position is pretty thoroughly set forth in the brief and what I've said so far. If Your Honors don't have further questions, we would request that the Court affirm the judgment. Thank you, Your Honors. All right. Mr. Carpenter, do you have anything else you want to tell us? Just a couple of quick points, Your Honor. First, my friend said correctly there are two judgments, and that is correct in the sense there are two pieces of paper. But what matters under Section K is that there is only one sentence, and you see that if you look at the revocation judgment at Joint Appendix page 85 where it says probation is revoked and the suspended sentence is activated. So this, we believe, means that the language of Section K is not satisfied because that language requires both an original term of imprisonment and a term of imprisonment imposed upon revocation. I thought Ms. Ray said that there was Conduct A for one thing and Conduct B. I don't understand that. Aren't there two sentences? So there are not two sentences because the State Court activated the prior, rather activated the previously imposed sentence. And that was, Judge Floyd, the exact next point I wanted to go to was to talk about your question about Misconduct A and Misconduct B. Because if you look closely at the Stewart case, that's exactly what was at issue there. Because what happens is the original sentence was suspended all except for the 53 days. He was released. He goes out and commits a breaking and entering that led to an additional charge. At the time he was arrested for that, his probation was revoked and the prior sentence was activated. So it is correct to say that the misconduct that led to the new B&E charge is what prompted the revocation. So you have two sentences there. Again, you do not have two sentences because if you had two sentences there, Judge Agee, your decision in Stewart would have come out the other way because that's exactly the argument that the defendant in Stewart made. The facts were the same. He was sentenced on the same day. I don't think the facts in Stewart were the same. I mean, this was a total suspension. Sure. The defendant had committed an A&B act and they just happened to sentence him on the same day. Right. And what happened in Stewart, the part of it that's analogous to the back-end thing that we're talking about here is that the defendant in Stewart was engaged in misconduct, received a new sentence for that misconduct on the same day that he was revoked and his prior sentence was activated. And the defendant argued that's a sentence and it should be treated as a separate sentence for purposes of the single sentencing rule, in which case they would have married together under the single sentence rule and he would have had fewer criminal history points as applied in that case. And what the court said is no, the revocation and the activation of the prior sentence links back to the original offense. In other words, under this weird North Carolina activation, I agree with my friend that lots of places have suspended sentences. Few places, at least according to the colleagues I've discussed, talked about this with and researched, few places do this activation procedure as opposed to the imposition of a new sentence. But regardless, that's what we think the key distinction is here, is that if you look at the face of the judgment and you look at state law, this is not the imposition of an additional sentence, it is the activation of a previously imposed sentence. And for that reason, we do not think the text of 4K is satisfied for the reasons that the court explained in Stewart. But 2K said, I don't have it all right in front of me, but part of it. In the case of a prior revocation or probation, there's some language in between, add the original term of imprisonment to any term of imprisonment imposed upon revocation. So we think the key verb in there that makes this different is imposed versus activated. So what clearly happened here... It doesn't say activated. Well, that's correct, and that's why we think we win, because K says that a sentence has to be imposed upon revocation. Here, this original sentence was imposed at the time of the original judgment in July of that year. And that's, again, what Stewart gets at, is that there's a difference between imposition and activation. That is why Stewart came out the way it did. Well, the only reason I'm pushing on it, it appears to be this is a first impression thing, and I would like to get it right. Yes, I agree, and that's why it is just a different scenario than the sort of serial parole or probation revocations that were at issue in the Third and Sixth Circuit cases. I mean, I credit my colleagues in those districts for coming up with an argument, but it's pretty clear why it lost, because the Guidelines text is very clear in those contexts that you do the addition. This is different because of the activation, and it's exactly the language that Stewart seized on in explaining that this adding methodology doesn't apply. And I think that the one quick last point, and we made this in the briefs, is that, yes, this was a total suspension in Stewart versus a partial suspension here, but the Guidelines treat total and partial as exactly the same for criminal history scoring purposes, and so we think that distinction should not matter. All right, thank you very much. We'll come down and greet counsel on this case, and then we'll move on to our last case.
judges: G. Steven Agee, Allison J. Rushing, Henry F. Floyd